# IN THE COURT OF APPEALS OF IOWA

No. 18-2166
Filed February 20, 2019

**IN THE INTEREST OF J.K. and M.K.,**
**Minor Children,**

**J.K., Mother,**
 Appellant,

**D.K., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A mother and father separately challenge the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Lori J. Kieffer-Garrison, Davenport, for appellant mother.

J. David Zimmerman, Clinton, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Brian Donnelly, Clinton, guardian ad litem for minor children.

Considered by Doyle, P.J., and Mullins and McDonald, JJ. Tabor, J., takes no part.

**MULLINS, Judge.**

A mother and father separately challenge the termination of their parental rights to their two children.

## I.   Background Facts and Proceedings

J.K. was born in 2009 and M.K. was born in 2014. Both parents have a history of alcohol abuse of approximately twenty years. The Iowa Department of Human Services (DHS) has had extensive involvement with the parents and the two children, including returning confirmed and founded reports of denial of critical care against the mother in June, September, and December 2011; July 2013; and October 2015. DHS also returned founded reports of denial of critical care against the father in September and December 2011 and July 2013. All reports against the parents involved the parents' abuse of alcohol. One report included the parents' use of illegal substances in addition to alcohol. The parents often drank to the point of passing out while the children were in their care. The father has been arrested on multiple occasions in relation to his alcohol abuse.

The parties separated in 2015 and shared physical care of the children under an informal arrangement. In late 2016, they reunited, in violation of an existing no-contact order. In February 2017, DHS received a report the father was intoxicated and physically assaulted the mother with the children present. The father was subsequently arrested. DHS returned a founded report of denial of critical care against the father. In May, DHS received a report that the mother left the children unsupervised. When found, the mother was intoxicated and unresponsive in an apartment that was not hers and M.K. was wandering down the hallway of the apartment building. J.K. was staying at a friend's house at the

time. The mother reported she began drinking in the morning, took anxiety medication at some point, and does not remember when she passed out. She awoke to the police talking to her. The mother was arrested and ultimately pled guilty to child endangerment. DHS returned a founded report of denial of critical care against the mother. The mother attended Alcoholics Anonymous meetings and domestic-violence counseling in June and began outpatient treatment in July. In September, the mother was arrested for driving under the influence. The children were not in her care at that time.

The court adjudicated the children to be in need of assistance (CINA) in September. The court ordered the children to remain in the temporary custody of the parents, subject to DHS supervision. In late September, the mother entered inpatient treatment after DHS received reports that she was consuming alcohol while caring for the children. DHS placed the children with the father, who, at that time, resided in a shelter due to a struggle to maintain his housing. The mother had overnight visits twice per week. In November, the court continued custody with the parents according to their shared-custody arrangement.

In January 2018, the father allowed the children to travel out of state with his brother, defying a court order prohibiting out-of-state travel without the court's permission. The father also allowed an individual with substance-abuse issues to reside with him for a few days without prior DHS approval. The mother was aware of this individual but did not inform DHS for fear the children would be placed in foster care. In late January, the father contacted DHS to remove the children as he could no longer take care of them. Ultimately, both parents voluntarily placed the children into foster care. The court subsequently modified the dispositional

order to reflect the foster-care placement. At the time of the termination hearing, the children remained in foster care.

Both parents' visitations began as partially supervised. The mother was able to progress to having multiple overnight visits while the father's visitation remained virtually the same. Both parents struggled to maintain stable employment throughout the pendency of the case. Further, both parents struggled to maintain healthy relationships as both parents' paramours often had their own alcohol- or substance-abuse issues to manage. The children's guardian ad litem (GAL) reported to the court in May that the parents were not fully engaged in services and were slow to respond to DHS's requests, noting this struggle was present throughout the pendency of this case. The court continued the foster-care placement and permanency goal of reunification.

In June and July, alcohol was found in the mother's home and she admitted to DHS that she relapsed. Her visitation reverted to semi-supervised. In September and October, both parents struggled—the mother failed to participate in services and the father relapsed. The father was arrested in relation to punching and breaking a window at a bar while under the influence of alcohol. The father also verbally assaulted other bar patrons. A few days after his arrest, the father began drinking in the morning and drank to the point of blacking out. He awoke under a bridge with a broken nose and lacerations on his face. Based on the length of time the children have been out of the parents' care and the parents' lack of progress and inability to remain sober, DHS recommended termination of parental rights. The State petitioned to terminate each parent's rights to both children pursuant to Iowa Code section 232.116(1)(a), (b), (d), (e), (f), (i), (k), and (*l*) (2018).

In December, the court terminated each parent's parental rights to both children pursuant to Iowa Code section 232.116(1)(d), (i), and (*l*). Each parent separately appeals.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* We will uphold the termination of parental rights "if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *Id.* "Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.    Analysis

"[R]eview of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We first determine if "any ground for termination under section 232.116(1) has been established." *Id.* If a "ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. "Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220.

### A.    Father's Petition

The father's parental rights to the children were terminated pursuant to section 232.116(1)(d), (i), and (*l*). If the juvenile court terminates parental rights

on more than one ground, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. The father challenges the statutory grounds upon which his rights were terminated but fails to clearly specify which ground for termination he is challenging. His arguments seem to challenge subsections (i) and (*l*), as he makes references to elements of those paragraphs. The father does not challenge termination under paragraph (d). Because the father does not dispute the statutory grounds for termination under paragraph (d), he has waived any challenge and we need not discuss the issue. *See* Iowa R. App. P. 6.903(2)(g)(3); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Therefore we affirm termination of the father's parental rights under section 232.116(1)(d).

The father also contends there is a clear bond between himself and the children and DHS's only concerns with his ability to parent the children were related to his health and financial issues. He argues those issues have been resolved. To the extent the father is challenging whether termination is in the best interests of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

On our de novo review, we find the children's best interests are served by termination of the father's parental rights. The father recognized he has issues with alcohol but believed he did not need treatment. Further, the father admitted his struggle with alcohol has lasted seventeen years and during that time, he has been in six to eight treatment programs. The evidence shows the father's issues with alcohol remain and he tends toward violence when drinking. Despite his recent relapses and arrest, he was not actively addressing his alcohol-related issues at the time of the termination hearing.

To the extent the father is arguing that a statutory exception to termination applies, "[t]he court need not terminate the relationship between the parent and child if . . . there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of a statutory exception to termination under section 232.116(3) is "permissive not mandatory." *M.W.* 876 N.W.2d at 225 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). "[T]he parent resisting termination bears the burden to establish an exception to termination." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the father]'s inability to provide for [the children]'s developing needs." *D.W.*, 791 N.W.2d at 709. On our de novo review, we find that, though there is a bond between the father and the children, the record does not indicate this bond outweighs the children's need for permanency and stability. The children should not have to "continuously wait for a stable biological

parent." *Id.* at 707. Accordingly, we do not find termination would be detrimental to the children based on the closeness of the parent-child relationship.

   B.   Mother's Petition

On appeal, the mother does not argue the State failed to present sufficient evidence of the grounds for termination, termination is contrary to the best interests of the children, or that a statutory exception to termination applies. Therefore, we need only consider her reasonable-efforts challenge and her request for an extension of time to work toward reunification. *See P.L.*, 778 N.W.2d at 40.

   *1.   Reasonable Efforts*

The mother asserts DHS failed to provide reasonable efforts to facilitate reunification. The mother argues her substance-abuse treatment remained ongoing throughout the case and the State failed to show that she could not provide a safe and loving home to the children. The mother contends she maintained a home throughout the pendency of this case. "The State must make reasonable efforts to provide services to a parent before termination proceedings may be instituted." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). However, "it is the parent's responsibility 'to demand other, different, or additional services prior to the termination hearing.'" *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (quoting *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999)); *accord In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."). The mother failed to challenge the reasonable efforts of the State or request additional or alternative services prior to the termination hearing. We therefore find this argument waived.

*2.      Extension*

The mother also requests additional time to allow for reunification. Section 232.104(2)(b) permits the juvenile court to continue the placement of a child for an additional six months to allow for reunification if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." On our de novo review, we find the children were removed from the parents' care due to both parents' alcohol-related issues. The mother's alcohol issues have been present for twenty years and, despite numerous treatment programs and services, those issues remain. We find there is no evidence in the record that the need for removal would no longer exist if the mother is granted additional time and decline to grant an extension.

## IV.      Conclusion

We affirm the juvenile court's order terminating both the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**